United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

LINDA S. SUTTER,

Plaintiff,

v.

CRESCENT CITY HARBOR DISTRICT, et al.,

Defendants.

Case No. 25-cv-10740-RMI

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 23

Now pending before the court is the Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") filed by Defendants Crescent City Harbor District (the "District"), District Commissioners Gerhard Weber, John Evans, and Rick Shepard, and District Harbormaster Michael Rademaker (collectively, "Individual Defendants"). (Dkt. 23.) Plaintiff filed a Response, (dkt. 24), and Defendants filed a Reply, (dkt. 25). For the reasons stated below, Defendants' Motion to Dismiss the FAC is GRANTED in part and DENIED in part, and Plaintiff's FAC is dismissed with leave to amend as set forth herein.

**BACKGROUND**

Proceeding pro se, Plaintiff Linda Sutter filed her original Complaint in November 2025, (dkt. 1), which was followed by the filing of Defendants' first dismissal motion, (dkt. 17). In lieu of responding to the motion, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt. 19.) Plaintiff filed the FAC without leave of court "to clarify allegations, address issues raised in Defendants' motion to dismiss, and to more specifically set forth the factual and legal bases for relief." (FAC at 2, Dkt. 19.) This new complaint added thirteen pages to the initial Complaint. (*See* Dkts. 1 & 19.) Defendants requested that the hearing on their original motion to dismiss be

vacated while the parties met and conferred regarding the FAC, (dkt. 20), and they subsequently filed their second Motion to Dismiss, which is the subject of this Order.[1]

*Summary of the FAC*

Plaintiff is "an investigative reporter for the Crescentcitytimes.com online newspaper, as well as the Local Triplicate Newspaper, a civic activist, and regular participant in Crescent City Harbor District meetings." (FAC ¶ 5.) Crescent City Harbor District is a special district organized under California law. (FAC ¶ 5.) Commissioners Weber, Evans, and Shepherd are elected officials of the Harbor District, and Harbormaster Rademaker is also an official of the District. (FAC ¶ 5.) Plaintiff filed her FAC against the District and against the Individual Defendants in their personal and official capacities. (FAC ¶ 5.)

The facts alleged in the FAC broadly fall into three categories: Defendants' conduct at commission meetings related to Plaintiff; Defendants' conduct at commission meetings and during official business towards women generally; and Defendants' responses (or lack thereof) to Plaintiff's efforts to gain access to public records. The first category addressed in the FAC is Defendants' conduct at commission meetings. On May 13, 2025, after Defendant Rademaker gave a presentation during the Crescent City Harbor District public meeting, Plaintiff allegedly asked, "What was the status of the $450,000.00 South Beach Bathroom grant funds and What is your educational background since you referenced it during the presentation?" (FAC ¶ 19.) Defendant Rademaker allegedly responded by saying that Plaintiff had profiled him, called his ex-wife, and contacted his former work associates daily. (FAC ¶ 19.) Plaintiff said that was a lie and asked Defendant Weber if she could use the rest of her time. (FAC ¶ 19.) When he agreed, Plaintiff allegedly told Defendant Rademaker, "Don't down-talk me like that, I know what you look like with your clothes off and it is not impressive." (FAC ¶ 19.) After this comment, Defendant Evans allegedly yelled "point of order" and asked that Plaintiff be removed from the meeting. (FAC ¶ 19.) Plaintiff refused to leave and told Defendant Evans to call the police, after which the meeting recessed for around ten minutes while a Harbor District attorney was consulted on whether

---

[1] Accordingly, the court finds that Defendants' first motion to dismiss (dkt. 17) is moot.

United States District Court
Northern District of California

Plaintiff could be removed from the meeting. (FAC ¶ 19.) Plaintiff was eventually allowed to remain, and Defendant Rademaker made another comment after the meeting resumed indicating that he had heard from others that Plaintiff was calling his wife and associates. (FAC ¶ 19.)

The next series of events took place at a Harbor District meeting on September 9, 2025. (FAC ¶ 20.) According to the FAC, Plaintiff attempted to ask about the "censorship of a commissioner" during public comment and was interrupted by Defendant Weber, who told her that she could not ask questions on that topic because it was not on the agenda. (FAC ¶ 20.) Plaintiff disagreed, and Defendant Weber ordered her to leave—Plaintiff again told him to call the police, and the meeting was placed on recess while Defendant Rademaker contacted an attorney. (FAC ¶ 20.) When the meeting resumed, the attorney first told Plaintiff that she could not ask questions about topics not on the agenda, but he later changed this opinion when he was informed that the censorship item had been removed from the agenda just prior to the meeting. (FAC ¶ 20.) Plaintiff was then given two minutes to finish speaking instead of the typical three. (FAC ¶ 20.)

The next set of allegations occurred across multiple events on October 22, 2025. That morning, Plaintiff went to the Harbor District Office hoping to view the Harbor Facilities plan. (FAC ¶ 21.) The office manager apparently did not know what the Harbor Facilities plan was and did not help her locate it. (FAC ¶ 21.) Plaintiff then walked down a hallway "that was not blocked from the public view" and began looking through white binders "that were accessible." (FAC ¶ 21.) The office manager called Defendant Rademaker and put him on speakerphone, over which he told Plaintiff that she could not look at the binders and said he would call the police if she did not leave. (FAC ¶ 21. Plaintiff left after the phone call. (FAC ¶ 21.) At a public Harbor District Commission meeting later than day, Defendant Shepherd allegedly told attendees that Plaintiff "went through a locked cabinet containing his social security number." (FAC ¶ 22.) Defendant Rademaker and the District's contracted bookkeeper then presented financial advice to the commissioners; during the public comment time that followed, Plaintiff allegedly stated, "I don't understand why you board members are taking financial advice from these two people when Rademaker has a past bankruptcy on file and [the bookkeeper] has had an IRS lien." (FAC ¶ 22.) In response, Defendants Evans, Weber, and Shepherd simultaneously interrupted to tell Plaintiff

that she could not make slanderous statements. (FAC ¶ 22.)

On July 25, 2025, Plaintiff submitted a complaint to the Maritime Administration ("MARAD") alleging that the Harbor District had violated federal nondiscrimination requirements and describing "a culture of harassment and retaliation within the Harbor District." (FAC ¶ 8.) On November 12, 2025, Defendant Shepherd allegedly "admitted" during a public meeting that he had told local fishermen that "Plaintiff was 'telling lies to MARAD (Maritime Administration)' and that he needed to 'straighten that out.'" (FAC ¶ 23.) Plaintiff later asked Defendant Shepherd about grand jury reports and whether the fiscal officer "had made false statements to the USDA regarding bankruptcy." (FAC ¶ 23.) Plaintiff also alleged that Defendant Shepherd told the owner of the Triplicate Newspaper—one of the outlets for which she writes news articles—to stop printing negative articles about the harbor or he would "request the commissioners to 'censor' him." (FAC ¶ 84.)

In addition, Plaintiff alleges that the Harbor District Commission implemented new meeting rules that are "vague, subjective, and grant broad discretion to the presiding chair to restrict speech," and which may be inconsistently enforced and operate to limit public criticism of the commissioners. (FAC ¶ 26.) According to the FAC, the "Rules of Decorum" were posted on the meeting room wall and read aloud on March 10, 2026. The portions of the rules identified by Plaintiff read:

> Be Respectful: Address issues, not individuals. No personal attacks, insults, or threatening language.
>
> Keep the Meeting Orderly: Public comment is for sharing views, not debate. Disruptions, shouting, or inappropriate language are not allowed. The chair may rule speakers out of order if needed.

(FAC ¶ 26.)

The next category of allegations in the FAC relate to the alleged "pattern and practice of disparate treatment and abuse toward women" by the Defendants. (FAC at 9.) Plaintiff first describes a series of incidents at public Harbor District meetings that she observed "as a journalist." (FAC ¶¶ 28–30.) In the first incident, a woman was interrupted by Defendant Weber for being "off topic"; when she protested, she was ordered to leave, and she told Defendant Weber

to call the police. (FAC ¶ 28.) After a short recess, the Commission voted to allow her to continue speaking. (FAC ¶ 28.) She told Plaintiff that she no longer attends public meetings because the stress is too great. (FAC ¶ 28.) In the second alleged incident, a woman speaking at a public meeting asked if she could clarify her comment after the end of her three minutes. (FAC ¶ 29.) Defendant Weber said she could not clarify, and when she asked again, he told her to leave and ordered two Sheriff Captains in the audience to remove her, though the captains refused. (FAC ¶ 29.) In the third incident, a woman who works as an editor for the Crescent City Times referenced a local recall effort during her public comment and used the name of the person leading the recall. (FAC ¶ 30.) That person was in the audience and shouted that she could not use his name, after which Defendant Weber "used his gavel to suppress her speech." (FAC ¶ 30.) No comment was made about the male audience-member's outburst. (FAC ¶ 30.) These three incidents took place on August 13, 2025; September 24, 2025; and November 22, 2025, respectively. (FAC ¶¶ 28–30.)

The final incident described in the FAC occurred on December 15, 2023. (FAC ¶ 33.) A woman was using the shower at an RV park facility and playing loud music when Harbor Patrol Officers locker her inside the shower. (FAC ¶ 33.) She called the Sheriff's Office, who eventually contacted Harbor Patrol, and their officers returned and unlocked the shower door. (FAC ¶ 33.) Plaintiff interviewed the woman, who said she feared retaliation and eviction by the Harbor Administration. (FAC ¶¶ 33–34.) Plaintiff also reviewed multiple Harbor Patrol reports, including those related to this incident, and allegedly discovered that multiple Harbor Patrol Officers referred to the woman as a "shower nazi" and referred to other women as "hoes," "tweaker tweaks," and "drunkards" in their official reports. (FAC ¶ 34.) Finally, Plaintiff alleges that after she reported this incident in a published article, Plaintiff was no longer given access to Harbor Patrol reports through her official records requests. (FAC ¶ 35.)

The next category of allegations concern Plaintiff's records requests under the California Public Records Act ("CPRA") and Defendants' responses to those requests. Plaintiff alleges that she made a request for records on May 14, 2025, and followed up on that request on September 9, 2025. (FAC ¶ 41–42.) Defendant Rademaker told her that she had to meet with him before information would be released, and Plaintiff protested that there was no such requirement in the

statute—Plaintiff's request was never answered and Defendant Weber allegedly announced in November 2025 that no CPRA requests would be filled. (FAC ¶ 42.) At some point, Defendant Weber also announced a new policy of redacting Harbor Patrol reports. (FAC ¶ 49.) Plaintiff alleges that she made a number of substantive records requests between May 2025 and March 2026, none of which received a response. (FAC ¶ 46, 52–53, 61–62.) Finally, according to the FAC, Plaintiff refused multiple attempts by the District's fiscal officer to give her a flash drive apparently containing responsive documents because the attempts did not follow proper procedure. (FAC ¶¶ 56–58.) Plaintiff alleges that these changes in policy and refusals to produce documents followed Plaintiff's critical coverage of the Harbor District administration and officials and were deliberate attempts to stymie her investigations and negative reporting.[2] (FAC ¶ 44, 50, 54, 63.)

Plaintiff's FAC alleges four causes of action—claim one, for violations of the First and Fourteenth Amendments to the U.S. Constitution; claim two, for *Monell* liability under 42 U.S.C. Section 1983; claim three, for violation of the Bane Act; and claim four, for slander under California law.

## LEGAL STANDARDS

The pending Motion to Dismiss challenges the sufficiency of the allegations set forth in the FAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), dismissal is proper when an operative complaint either fails to advance "a cognizable legal theory" or fails to allege "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *accord Graehling v. Vill. of Lombard*, 58 F.3d 295, 297 (7th Cir. 1995). In evaluating motions to dismiss for failure to state a claim, courts must (1) construe the operative complaint in the light most favorable to the plaintiff; (2) accept all well-

[2] The final category of factual allegations detail alleged violations of the Ralph M. Brown Act. (FAC at 17.) According to the FAC, the District misuses "special" meetings to avoid the requirement that meetings times and agendas be posted in advance, (FAC ¶¶ 68, 70); improperly characterizes standing committees as "ad hoc" committees to avoid certain notice and transparency requirements, (FAC ¶¶ 73–74); and uses an app called Ring Central to allow commissioners and Defendant Rademaker to hold meetings and communicate without public knowledge or transparency, (FAC ¶ 77.) A grand jury also allegedly found in 2024 that the District's website incorrectly listed agendas and board packets and that the District did not follow "best practices" by failing to publish meeting minutes and agendas for many public meetings held between 2021 and 2024. (FAC ¶ 69.)

pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive dismissal under these standards, a complaint must contain sufficient factual allegations to establish a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). This task "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 557). Plausibility is established where the well-pleaded facts permit the court to infer more than the mere *possibility* of misconduct and show that the pleader is entitled to relief. *See Iqbal*, 556 U.S. at 678–79.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Under Rule 8(a), a claim is adequately pled if it provides fair notice of the nature of the claim and the facts underlying it." *Henderson v. Marrow*, No. CV1004833MMMAGRX, 2011 WL 13217241, at *2 (C.D. Cal. Feb. 10, 2011).

## DISCUSSION

### ***First Claim***

Plaintiff's first claim for relief is brought under 42 U.S.C. § 1983 against the Individual Defendants.[3] Defendants move to dismiss this claim as to the Commissioners under legislative immunity, and as to Harbormaster Rademaker under qualified immunity. (Defs.' Mot, Dkt. 23, at 16–20.)

1. Notice Regarding Sua Sponte Dismissal of First Amendment Claim

Defendants do not make a general argument under Rule 12(b)(6) that the First Claim

[3] Plaintiff's FAC does not plead a separate claim under the Fourteenth Amendment's Equal Protection Clause against the Individual Plaintiffs, and thus the court declines to read the FAC as containing one.

should be dismissed for failure to state a claim, instead focusing on legislative and qualified immunity. A court, however, may dismiss a claim sua sponte under Federal Rule of Civil Procedure 12(b)(6). *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). A sua sponte dismissal for failure to state a claim requires the court to "give notice of its sua sponte intention to invoke Rule 12(b)(6) and afford plaintiffs an opportunity to at least submit a written memorandum in opposition to such motion[.]" *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981) (internal quotation marks and citation omitted); *see also Silverton v. Dep't of Treasury of U.S. of Am.,* 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."). In addition, courts may dismiss a complaint sua sponte under Rule 8 where the complaint is so confusing, ambiguous, and redundant that "its true substance, if any, is well disguised." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting *Gillibeau v. City of Richmond,* 417 F.2d 426, 431 (9th Cir. 1969)). While the FAC sets forward a number of factual allegations that could form the bases of a variety of claims, it fails under Rule 8 because it does not clarify which Defendants are the object of each cause of action and on what grounds, it does not connect the factual allegations to the legal claims, and it is not clear which, if any, of the conclusory legal statements throughout are intended to bring a claim. For these reasons, it does not sufficiently give notice of "the nature of the claims" and does not meet Rule 8's requirement that averments be "simple, concise, and direct." Fed. R. Civ. P. 8(e).

Plaintiff's FAC contains many factual allegations and legal statements which are purported to be incorporated into each claim, but the actual text of the First Claim is limited and unclear. The title is "First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983; California Constitution Article 1 §2(a)." The text beneath reads, in part,

> 86. The First Amendment to the United States and Article 1 of the California Constitution guarantees the press the right to cover public officials and protect individuals from government interference based on the content of viewpoint of their speech. By interrupting Plaintiff's public remarks and threatening her removal, the District unlawfully infringed upon Plaintiff's public remarks threatening her with removal, the District infringed upon Plaintiff's constitutionally protected right to

> freedom of speech.
>
> 87. Government officials may not silence or punish speakers simply because they disagree with. [sic] Or take offense at, the content or viewpoint being expressed. The First Amendment squarely prohibits viewpoint discrimination, and criticism of government officials or agencies lies at the very core of protected speech. When officials interrupt, threaten removal, or otherwise retaliate against a speaker for expressing dissent or criticism of government conduct, they engage in unconstitutional suppression of speech. . . .

(FAC ¶¶ 86–87.) The remainer of the claim does not substantively address the allegations. As written, the First Claim contains largely conclusory statements and statements not directed at any Defendant while stating that the "allegations of paragraphs 1–83 above are incorporated by reference as though fully set forth herein."[4] (FAC ¶ 85.) There is no mention of the basis for a Fourteenth Amendment claim, and no clarification as to what type of First Amendment claim is meant to be stated. Moreover, no Defendants are identified in this claim except the District, which is already the object of a separate section 1983 claim under *Monell* liability.

The FAC contains many factual allegations and associated conclusory legal statements. However, the FAC does not adequately connect the factual allegations to the actual causes of action stated at the end of the Complaint, and thus it is difficult to discern what claims Plaintiff intends to bring and the basis for each claim. For example, the First Claim does not mention the denials of Plaintiff's records requests, which make up a substantial portion of the FAC and which Plaintiff describes in her response to the Motion. Even if the records requests are incorporated into the First Claim, it is not clear whether the records-related claims are against only Defendant Rademaker, as the "records custodian," or also against the other Defendants, and on what grounds these Defendants could be personally liable for records-based decisions. It is also not clear whether the records-request allegations are intended to be part of Plaintiff's Fourteenth Amendment claim, or what the substance of this Fourteenth Amendment claim is meant to be—elsewhere, Plaintiff discusses sex discrimination, but she also mentions concepts like due process and discrimination against members of the press, and none of these are even briefly included in the

---

[4] Adding to the ambiguity, this statement does not purport to incorporate paragraph 84, which is nominally under the "slander" section of the FAC and repeats allegations about Defendant Shepherd's reference to Plaintiff's complaints to MARAD. Whether this exclusion is meaningful or intentional is unclear.

United States District Court
Northern District of California

First Claim.

The Individual Defendants' conduct at commission meetings is the only set of facts explicitly referenced in the First Claim, and even then it is difficult to tell the exact nature of the claim because there is no differentiation between the Defendants. Moreover, the FAC mentions a variety of First Amendment claim types and describes facts that could be used for such claims, but it is not clear whether Plaintiff intends to bring every one of these claims. For example, Plaintiff cites the Rules of Decorum early in the FAC and states that "as written and applied, the rules operate to limit public criticism" and "create a risk of viewpoint discrimination," (FAC ¶ 26), but Plaintiff does not clearly bring a facial challenge against the Rules, and the language of "create a risk" is ambiguous as to whether Plaintiff intends challenge the Rules as facially unconstitutional restrictions on speech, facially discriminatory based on viewpoint, unconstitutional as enforced by the Individual Defendants, only potentially unconstitutional, or some combination. These differences are important because they set the standards for whether Plaintiff has successfully brought a claim against the Individual Defendants in their personal capacity.

To further underscore the difficulty with understanding the FAC as written, the court contrasts some of the possible remaining claims. For example, if Plaintiff is only bringing a First Amendment retaliation claim based on the interruptions and removal orders, she has likely failed to state a claim on this basis against any Defendant. *See, e.g.*, *Leos v. City of El Monte*, No. 2:23-CV-02427-JLS-JPR, 2023 WL 6192700, at *3 (C.D. Cal. Aug. 8, 2023) (finding that a local official interrupting, speaking over, and threatening to remove the plaintiff from a city council meeting were not sufficiently adverse to chill a person of ordinary firmness, especially because the plaintiff "was not in fact removed from the meeting"). However, it is a much closer question if she is challenging the enforcement of the Rules, as the facts are lacking with respect to the impact of the interruptions on her speaking time and whether she was "actually disruptive." *Compare Jones v. Town of Quartzsite*, No. CV-12-01383-PHX-JAT, 2014 WL 4771851, at *4 (D. Ariz. Sept. 24, 2014) (finding viewpoint discrimination where the plaintiff was ejected from town council meeting for a procedural violation immediately after criticizing council in a non-disruptive manner), *with Bezis v. City of Livermore*, No. 19-CV-01061-RS, 2019 WL 13248273, at *3 (N.D.

Cal. Aug. 29, 2019) ("[A]n individual does not have the constitutional right to address a city council without interruption"). Finally, if she is challenging the substance of the Rules of Decorum themselves for viewpoint discrimination, she is more likely to succeed. *See, e.g.*, *Acosta v. City of Costa Mesa*, 718 F.3d 800, 813 (9th Cir. 2013) ("[T]he ordinance . . . prohibits the making of 'personal, impertinent, profane, insolent or slanderous remarks.' That, without limitation, is an unconstitutional prohibition on speech."); *Leventhal v. Vista Unified Sch. Dist.*, 973 F. Supp. 951, 956–60 (S.D. Cal. 1997) (striking down bylaw limiting criticism of public employees at open Board meetings); *Dowd v. City of Los Angeles*, No. CV 09-06731 DDP SSX, 2013 WL 4039043, at *20 (C.D. Cal. Aug. 7, 2013) ("[T]his incident is exemplary of why it is unconstitutional to restrict speakers from making personal attacks in City Council meetings; it chills speech critical of elected officials, which is speech at the heart of the First Amendment."). *But see Warden v. Walkup*, No. CV-13-00283-TUC-DCB, 2020 WL 1694752, at *5 (D. Ariz. Apr. 7, 2020) ("Here, the manner/topic restriction of "no personal attacks" was neutral and did not preclude the Plaintiff from presenting his opinion; it reasonably prohibited the manner of the presentation."). As written, Defendants were not on notice from the FAC as to the nature of the claims against which they are defending, and the analysis is substantially different depending on what types of First Amendment and Fourteenth Amendment claims Plaintiff brings, against which Defendants, and on what factual or legal bases.

However, because the claim does directly mention Defendants' conduct at Commission meetings and retaliation, the court will address whether Plaintiff has stated a claim under a few stated legal theories. First, Plaintiff consistently alleges that Defendants made defamatory remarks about her in public meetings in retaliation for her viewpoint and protected speech, in violation of the First Amendment. To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). The Ninth Circuit has "set a high bar when analyzing

whether speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim," as government officials have their own First Amendment rights that must be given weight. *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016). Accordingly, defamation by government officials is not sufficiently adverse to create a right to remedy under the First Amendment "in the absence of 'state action affecting [a plaintiff's] rights, benefits, relationship or status with the state.'" *Mulligan*, 835 F.3d at 989 (quoting *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994)). In cases where government actors "take severe retaliatory actions—such as . . . engaging in campaigns of harassment and humiliation," plaintiffs may still allege First Amendment retaliation even if these actions do not affect the plaintiff's benefits or status. *Coszalter v. City of Salem*, 320 F.3d 968, 975–76 (9th Cir. 2003); *accord Aydelotte v. Town of Skykomish*, 757 F. App'x 582, 584 (9th Cir. 2018) (applying *Coszalter* to a private citizen instead of a government employee where the mayor's actions included threatening the plaintiff with ticketing and eviction as well as excluding him from public meetings); *Addison v. City of Baker City*, 758 F. App'x 582, 584 (9th Cir. 2018) (same where police officer contacted the plaintiff's employers and directed other officers to ticket him). The FAC's allegations that Defendants combined made four derogatory or false statements about her at public meetings do not rise to the level of a "campaign of harassment or humiliation" and cannot be considered "severe." As such, Plaintiff has failed to state a First Amendment claim with respect to Defendants' alleged defamation at public meetings.

In addition, to the extent that Plaintiff alleges that Defendants took adverse action against her by stonewalling her public records requests and by threatening to call the police on her while she attempted to access public records in a government building, she has not stated facts necessary to show the causal connection between these actions.[5] To ultimately "prevail on such a

---

[5] Defendants argue that this part of the claim fails because denial of access to public records does not implicate First Amendment rights. They are correct that there is no free-standing First Amendment right to access public records. *See, e.g.*, *Dominguez v. Abaci*, No. 23-CV-03669-LB, 2023 WL 5211325, *4 (N.D. Cal. Aug. 13, 2023) ("The First Amendment does not 'mandate[ ] a right of access to government information or sources of information within the government's control.'" (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 14–15 (1978)); *Hammerlord v. Elliott*, No. 23CV663-JO-KSC, 2023 WL 3940109, at *2 (S.D. Cal. June 9, 2023) ("[T]he refusal to provide public records is not a constitutional violation."). However, this is not responsive to the claims in the FAC, which are not based on the mere denial of access to records but on the alleged denial

[retaliation] claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman*, 547 U.S. at 259). Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (quoting *Hartman*, 547 U.S. at 260, 126); *see also Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019). Plaintiff may show that her protected activity was a "substantial or motivating factor" behind Defendants' actions through "either direct or circumstantial evidence." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020). The FAC states that the actions related to her records requests were retaliation for her criticism both during the Commission meetings and in her published news articles. Beyond these conclusory statements about Defendants' motives, however, Plaintiff has failed to allege facts showing the causal connection necessary to demonstrate retaliation. For example, while the FAC alleges that the District's failure to respond to records requests was retaliation for her critical reporting, there is no indication of when her reporting was published or what her reporting covered beyond "criticism" and thus no temporal or substantive connection has been established. Moreover, the FAC alleges that Defendant Weber announced in November 2025 that no public records requests under the CPRA would be filled, and that District agents did try to give her documents on a flash drive—while these actions might violate state law, they undermine Plaintiff's argument that Defendant's failure to fulfill her records requests was retaliation for her protected speech. Plaintiff has similarly failed to show this causal connection between her speech and the incident in which Defendant Rademaker threatened to call the police.[6] Accordingly, to the extent that the FAC brings a retaliation claim against Defendants

---

of access to public records *in retaliation* for Plaintiff's protected speech. "[W]hen the government selectively discloses information within its control, a First Amendment claim will lie if the government denies access to information 'based on an illegitimate criterion such as viewpoint[.]'" *Boardman v. Inslee*, 978 F.3d 1092, 1107 (9th Cir. 2020) (quoting *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 43 (1999) (Ginsburg, J., concurring)).

[6] Plaintiff has not established that this incident was motivated by her speech rather than her activity in wandering around the building and looking through materials. In this context, entering public buildings and looking at government materials is not protected activity.

United States District Court
Northern District of California

based on their allegedly defamatory remarks and the records request responses (or lack thereof), Plaintiff has failed to state a claim and Plaintiff is on notice of the court's intent to sua sponte dismisses these claims or elements of claims under Rule 12(b)(6).

Plaintiff should amend her FAC to clearly connect her factual allegations to her causes of action, clearly state the causes of action, and state which Defendant(s) each cause of action is brought against. She may also amend to address the failures to state a claim identified above. As such, this Order serves as Plaintiff's notice of the court's intention to dismiss, sua sponte, the First Claim for inadequate pleading under Rule 8 and failure to state a claim under Rule 12(b)(6). Plaintiff shall have fourteen (14) days to file an opposition to this Order if she so wishes. Otherwise, Plaintiff shall have twenty-one (21) days to file a Second Amended Complaint.

1. <u>Legislative Immunity</u>

While the nature of the claims Plaintiff intends to bring are obscured by her FAC, the factual allegations are sufficient to evaluate Defendants' legislative immunity argument.[7] Defendants argue that Commissioners Weber, Evans, and Shepherd are protected from Plaintiff's First Amendment claim under legislative immunity because they are absolutely immune from suit under § 1983 for their actions taken "in the sphere of legitimate legislative activity." (Defs.' Mot. 9 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998).) Plaintiff argues that the Commissioners' conduct was "administrative" or "enforcement-based" rather than legislative in nature, and that as a result, their conduct falls outside of the scope of legislative immunity. (Pl.'s Resp., Dkt. 24, at 14.) Specifically, Plaintiff clarifies in her Response that the FAC does not challenge "legitimate legislative decision-making" and instead "alleges that Defendants: interrupted and curtailed protected speech based on viewpoint, threatened removal to suppress dissent, selectively enforced rules of decorum, and retaliated against Plaintiff for engaging in protected First Amendment activity." (*Id.*)

"[L]egislators are absolutely immune from liability under § 1983 for their legislative acts."

[7] The court does not address Defendants' qualified immunity argument with respect to Defendant Rademaker because the court has found that the FAC does not adequately plead the First Claim for constitutional violations, which is the first element of the qualified immunity analysis.

*Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1135 (9th Cir. 2012). To decide whether legislative immunity attaches to a particular action, courts consider "the character and effect" of the conduct rather than "defined categories of government acts." *Schmidt*, 693 F.3d at 1135. To that end, courts in this circuit typically analyze four factors when deciding whether an act was legislative: "(1) 'whether the act involves ad hoc decisionmaking, or the formulation of policy'; (2) 'whether the act applies to a few individuals, or to the public at large'; (3) 'whether the act is formally legislative in character'; and (4) 'whether it bears all the hallmarks of traditional legislation.'" *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (quoting *Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir. 2002)). "The first two factors are largely related, as are the last two factors, and they are not mutually exclusive." *Schmidt*, 693 F.3d at 1135 (quoting *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 960 (9th Cir. 2010)). Legislative immunity protects legislative acts at the federal, state, and local levels. *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1164 (E.D. Cal. 2017). Finally, "[t]he burden of proof in establishing absolute immunity is on the individual asserting it." *Kaahumanu,* 315 F.3d at 1220 (citing *Trevino v. Gates*, 23 F.3d 1480, 1481 (9th Cir. 1994)).

Here, the court concludes that Defendant Commissioners' actions were squarely administrative in nature and not taken in the sphere of legitimate legislative activity. First, the decisions to cut off Plaintiff's speaking time, order her removal, and enforce decorum rules were ad hoc decisions based on the circumstances in those moments that did not effectuate policy or create a binding rule. *See Kaahumanu*, 315 F.3d at 1220. Second, Defendant Commissioners' actions applied to Plaintiff alone rather than the public at large. Third, requesting that a person leave or be removed from a meeting and shortening a person's speaking time on the spot is not formally legislative in character. Finally, the alleged acts lacked the hallmarks of traditional legislation. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 977 (9th Cir. 2010) ("In this case, we are dealing with city officials who ejected one individual from City Council meetings. . . . [T]he second, third, and fourth factors clearly point to this being an administrative rather than legislative act . . . so the defendants are not entitled to absolute immunity."). Thus, the Motion to Dismiss the First Claim against the Commissioners on the basis of legislative immunity is **DENIED**.

***Second Claim***

Plaintiff's Second Claim for relief is for *Monell* liability against the District under 42 U.S.C. § 1983. (FAC ¶¶ 91–98.) Plaintiff alleges the following in the FAC:

> The Constitutional violations alleged herein were caused by the District's official policies, longstanding customs and widespread practices, including but not limited to;
>
> (A). Custom and practice of suppressing public comment and engaging in viewpoint discrimination against Plaintiff, and other women who criticized District Officials or raised concerns regarding fiscal management, transparency, or compliance with law;
>
> (B). A custom and practice of permitting District Officials and employees to make false, defamatory, retaliatory statements about members of the press during public meetings, while using meeting authority and threats of law enforcement to silence rebuttal or dissent;
>
> (C). A practice of selectively enforcing meeting rules, including interruptions, gaveling, shortened speaking time, recesses, and threats of removal, in order to chill protected speech;
>
> (D). A policy or practice of institutional noncompliance with the California Public Records Act, including refusal to acknowledge requests, refusal to produce records, conditioning production on improper meetings, and public announcements that records would not be released;
>
> (E). A Custom and practice of tolerating discriminatory, degrading and retaliatory conduct toward women by Harbor District Officials and Harbor Patrol personnel, including the use of misogynistic language in official reports;
>
> (F). A failure to implement adequate policies, training, supervision, and discipline regarding constitutional rights, public meeting conduct, public records compliance, harassment prevention, and harbor patrol oversight.

(FAC ¶ 93.)[8]

Defendants contend that Plaintiff has failed to identify an official District policy that caused a violation of her rights, and that she has failed to show that Individual Defendants or District representatives violated her rights in the first place, and thus she cannot show a pattern or

---

[8] Plaintiff attempts to bring a CPRA claim within her federal section 1983 claim, but CPRA violations alone cannot form the basis of a section 1983 claim and thus this element of Claim Two will not be addressed by the court. *Dominguez v. Abaci*, 2023 WL 5211325, at *4 (N.D. Cal. Aug. 13, 2023) ("The CPRA does provide for a private right of action. . . . that is a state-law claim, and without any federal claim, the court would need to have diversity jurisdiction to hear the state-law claim.); *Dayton v. James*, No. 216CV1735KJMKJNPS, 2017 WL 68240, at *2 (E.D. Cal. Jan. 6, 2017) (finding that "a [CPRA] violation by itself is insufficient to state a claim under 42 U.S.C. § 1983").

practice on the part of the District such that the District is liable under section 1983. (Defs.' Mot., Dkt. 23, at 13.) Plaintiff in opposition argues that she has alleged "repeated" conduct sufficient to support a plausible inference of an unconstitutional policy or practice. (Pl.'s Resp., Dkt. 24, at 26.)

As an initial matter, to the extent that the court has found that the FAC fails to adequately plead constitutional violations, the claim against the District for these violations also fails. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims thus require a plaintiff to show an underlying constitutional violation."). However, because this claim does attempt to identify the policies underpinning the claim, the court evaluates the other elements of this claim to help streamline any amendment and finds that Plaintiff has failed to show the existence of a policy, custom, pattern, or practice maintained by the District and that District employees or agents acted pursuant to such policy or custom when they violated Plaintiff's constitutional rights. *See, e.g.*, *Cook v. City of Fremont*, 2021 WL 764044, at *7 (N.D. Cal. Feb. 26, 2021) ("Although [Plaintiff] alleges facts regarding his own experiences, he fails to identify a specific custom or practice beyond vague and conclusory allegations.").

The Supreme Court has held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, municipal liability may be established in three ways: "(1) the constitutional violation was the result of a governmental policy or a longstanding practice or custom; (2) the individual who committed the constitutional violation was an official with final policy-making authority; or (3) an official with final policy-making authority ratified the unconstitutional act." *Perryman v. City of Pittsburg*, 545 F. Supp. 3d 796, 799 (N.D. Cal. 2021) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). Thus, one way for plaintiffs to properly articulate a section 1983 claim against a municipality is to show that the municipality's employees or agents acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights. *See Monell*, 436 U.S. at 690–91. The alleged unconstitutional policy need not be express or formally adopted if the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S.

112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

Plaintiffs can demonstrate the existence of a custom or pattern by alleging repeated constitutional violations for which the offending officers were not reprimanded. *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) ("A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded."), *abrogated on other grounds as recognized in Beck v. City of Upland,* 527 F.3d 853, 862 n. 8 (9th Cir.2008)); *see also Mitchell v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1028–29 (N.D. Cal. 2022). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *accord Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011) (affirming dismissal where complaint "lacked any factual allegations . . . demonstrating that [the] constitutional deprivation was the result of a custom or practice [] or that the custom or practice was the 'moving force' behind [the] constitutional deprivation"). When determining whether a plaintiff has sufficiently alleged a pattern of conduct, courts consider factors like "the number of incidents, the factual similarity of those incidents, their timing, and any subsequent action by the defendant." *Seever v. City of Modesto*, No. 121CV01373JLTEPG, 2022 WL 17418355, at *3 (E.D. Cal. Dec. 5, 2022).

Plaintiff alleges that the District maintains the following unofficial policies or customs: toleration of officials making false or defamatory statements against members of the press at public meetings to silence dissent, selective enforcement of meeting rules to chill protected speech, discrimination against women at district meetings, and toleration of discrimination against women by harbor district officials. (FAC ¶ 93.) With respect to the alleged custom or practice of allowing District officials to make false or defamatory statements (and use "meeting authority and threats of law enforcement") against members of the press, Plaintiff has alleged three instances where she was subjected to this type of treatment by Individual Defendants and one instance where a news outlet editor was interrupted by a member of the public who was not reprimanded

for his outburst. These events do not establish a pattern with respect to the press at large because they are not sufficiently similar to each other, and they do not support the conclusory allegation that an unofficial custom was the motivating force behind these incidents.

Insofar as the FAC alleges that the District had a custom or practice of "selectively enforcing meeting rules . . . to chill protected speech," it is not clear whether the protected speech chilled is any speech made at Commission meetings, or specifically speech containing viewpoints critical of the District and its officials. Plaintiff has alleged that two incidents occurred in which she was interrupted while speaking critically about District officials. This is insufficient to show a pattern of selective enforcement rising to the level of an unofficial custom or practice.[9]

The FAC also alleges that meeting rules are enforced unconstitutionally to discriminate against women in violation of the Fourteenth Amendment, and that this discrimination is a practice of the District. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff's FAC describes three instances in which Defendants invoked the rules against her, which twice ended in unfulfilled orders for her to leave the meeting; two instances of Defendants invoking the rules against women, both of which ended in Defendants ordering the women to leave (although neither did); and one instance where a woman speaking at the podium was interrupted by a male audience member who was not reprimanded, after which "Chair Weber used his gavel to suppress her speech" and the speaker reclaimed her time. Only the last of these incidents involved an allegation that could be construed as demonstrating differential treatment, and the allegations of Defendants' conduct are insufficient to demonstrate a pattern of purposeful discrimination based on the speakers' status as women. The FAC also alleges that the actions against women were in part

[9] If Plaintiff intended to challenge official policy via the Rules of Decorum in this claim, that is not clear from the wording of the FAC. While Plaintiff's FAC mentions the official Rules of Decorum towards the beginning, the allegations surrounding the Rules are not properly incorporated into the section 1983 claim and thus the court does not read into the FAC a claim based on the Rules.

motivated by their criticism, which undermines the contention that the discrimination was based on their protected class and goes towards the First Amendment claims, which the court has already addressed. Moreover, in one incident, the other commission members voted to let the woman continue speaking after Defendant Weber's interruption and removal order, and in another, the District's attorney clarified that Plaintiff was allowed to continue speaking—these actions by other District employees undermine claims that Defendants' actions were pursuant to a policy or custom of the District at large.

With regard to the language used to describe women in official reports, Plaintiff has not established how often this language occurred or by how many reporting officers—the allegation as it stands is insufficient to state a long-standing custom or practice. While derogatory remarks may be sufficient to support an inference of animus, the remarks alone do not establish a constitutional violation.[10] *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) ("[v]erbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." (quoting *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir. 1987)), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008); *see also see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988); *Crowder v. Diaz*, No. 2:17-CV-1657-TLN-DMC, 2019 WL 3892300, at *17 (E.D. Cal. Aug. 19, 2019) (finding that derogatory statements made by the defendant supported the inference of animus motivating the defendant's other alleged actions), *R. & R. adopted*, No. 217CV01657TLNDMC, 2019 WL 5566433 (E.D. Cal. Oct. 29, 2019).

While Plaintiff's FAC does offer more than "mere conclusory statements" in some

---

[10] The FAC does allege that Defendant Rademaker is "responsible for the training, supervision, and oversight of Harbor Patrol personnel and, at all relevant times, was aware of the conduct of his subordinates" and that in this capacity he "failed to take corrective action and permitted unprofessional, offensive, and discriminatory language—including misogynistic and derogatory statements—to be included in official Harbor Patrol reports." (FAC ¶ 36.) Ratification "generally requires more than acquiescence" by policymakers—plaintiffs must show that policymakers "made a deliberate choice to endorse" the unconstitutional actions. *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014) (second quoting *Gillette*, 979 F.2d at 1348), *rev'd in part on other grounds by* 575 U.S. 600 (2015). Notwithstanding the fact that the alleged report language alone is not a constitutional violation, Plaintiff's allegations are conclusory and do not sufficiently state a claim against the District based on ratification. *See, e.g.*, *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) ("A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim."); *Perryman v. City of Pittsburg*, 545 F. Supp. 3d 796, 803 (N.D. Cal. 2021) (finding failure to state a claim based on ratification where complaint did not specify action by which policymakers affirmatively approved conduct of subordinates).

instances, her allegations together do not give rise to the inference of a custom or policy by the District, nor that the Individual Defendants acted pursuant to such a policy, and thus the FAC fails to properly plead a *Monell* claim. *Howe v. Cnty. of Mendocino*, No. 21-CV-00935-RMI, 2021 WL 4061663, at *11 (N.D. Cal. Sept. 7, 2021), *aff'd*, No. 21-16665, 2022 WL 3952395 (9th Cir. Aug. 31, 2022) (finding "a few generalized statements that supposedly offer criticism of the County's management" not enough to save improperly pleaded and conclusory *Monell* claims).

Plaintiff's *Monell*-related allegations with respect to ratification and training are similarly deficient. These allegations are mere recitations of the basic elements of a *Monell* claim, and they do not provide sufficient detail to suggest a plausible claim for relief. (FAC ¶¶ 94–96.) Accordingly, the court **DISMISSES** Plaintiff's Second Claim for municipal liability.

***Dismissal with Leave to Amend***

Having dismissed the FAC's Second Claim and having notified Plaintiff of this court's intention to dismiss her First Claim as to all Individual Defendants sua sponte—the only two federal claims—the court will not address Defendants' arguments about the state law claims as the court will decline supplemental jurisdiction if Plaintiff cannot amend her complaint to include a federal claim.[11] As a general matter, federal courts typically do not exercise supplemental jurisdiction over state law claims if all federal claims have been dismissed. 28 U.S.C. § 1367(c)(3); *see also Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) ("[A]lthough supplemental jurisdiction persists [after all federal claims have been dismissed], the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court."). In exercising their discretion, courts consider the values of judicial economy, comity, convenience, and fairness, *see, e.g.*, *Curtis v. Inslee*, 154 F.4th 678, 696 (9th Cir. 2025),

[11] Supplemental jurisdiction over state law claims applies where the state and federal claims "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)). Here, the state and federal claims arise from the same set of facts—the commission meetings and the records request responses—and thus supplemental jurisdiction must extend to the state law claims unless it is prohibited by § 1367(b) or a § 1367(c) exception applies. *See Whitaker v. Ohanessian*, No. 19-CV-07183-SK, 2020 WL 95644, at *2 (N.D. Cal. Jan. 8, 2020) ("Plaintiff's claims . . . derive from the same common nucleus of operative facts . . . . Therefore, the Court shall exercise supplemental jurisdiction unless there is an applicable exception under Section 1367(c).").

United States District Court
Northern District of California

but district courts in the Ninth Circuit are not required to explain their reasoning when acting under §§ 1367(c)(1)–(3), *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478–79 (9th Cir. 1998). Given that this case is still in the very early stages of litigation and the remaining claims deal with California statutory questions rather than question of federal law, it is appropriate for the court to decline to exercise supplemental jurisdiction when all federal claims are dismissed.

However, leave to amend should be granted with "extreme liberality." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009)). The court may deny leave to amend if it is clear that amendment would be futile because further amendments cannot remedy the defects in the complaint. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."). District courts may also consider "several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown*, 953 F.3d at 574 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).) Here, Plaintiff can amend to address the Rule 8 deficiencies described by the court, and she may be able to amend to address the issues under Rule 12(b)(6) identified above. There is no evidence of bad faith and no undue delay, and Defendants have not argued that they will be unduly prejudiced. Moreover, Plaintiff's prior amendment was made without a prior order explaining the prior complaint's deficiencies. As such, and because amendment is not futile, leave to amend is granted.

Accordingly, Plaintiff's state law claims are **DISMISSED**. Defendants' request that the dismissal be with prejudice is **DENIED**.

## CONCLUSION

Accordingly, for reasons stated herein, Defendants' Motion to Dismiss (dkt. 23) is **GRANTED** in part and **DENIED** in part.

As noted above, Plaintiff may file an opposition to this Order within fourteen (14) days. Alternatively, Plaintiff may instead file a Second Amended Complaint, in accordance with this court's guidance above, within twenty-one (21) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 6, 2026

ROBERT M. ILLMAN
United States Magistrate Judge